We will dispense with the calling of the calendar and proceed to oral argument in the first case 23-873, Scales v. Hotel Trades Council. Judge Calabresi, are you okay to proceed? I'm hearing no yelling. Okay. So you can adjust. You want to speak in front of both microphones. And why don't you give us a test and make sure the judge can hear you. Good morning, Your Honor. No? It's best to actually speak in the middle of the microphones. Good morning? Okay. You'll have to speak as loud as you can. I will do so. It's not really working. All right. And we may have to pause if he can't hear and address it further. So he'll let us know. Counsel Halpern, you've reserved three minutes for rebuttal, and you may proceed when you're ready. Thank you, Your Honor, and may it please the Court. I'm Lydia Halpern of Cobre & Kim. We are pro bono counsel for Appellant William Scales, and we were appointed pro bono counsel by this Court's panel. The district court in this case committed two reversible errors. First, it granted the union, Appellee's, motion to dismiss Mr. Scales' amended complaint, despite the fact that Mr. Scales, as a pro se litigant, had put sufficient facts into the court record to support a hybrid claim for breach of duty of fair representation. Second, it abused its discretion in denying Mr. Scales multiple requests for counsel, where, after the first request, it does not appear that the district court considered the new information that was presented to it about why counsel was needed, despite the extraordinary circumstances of this case, where Mr. Scales indicated to the court in his subsequent requests for counsel that he was being sabotaged by the union counsel's conflict of interest. Despite Mr. Scales' Let me tell you what I think is the issue in this case, and that is, if the union had a duty to inform about the timing, then the union's representation in the arbitration would be conflicted, might be conflicted, but if the union had no duty to do that, then I don't understand what this case is about. So I'd like really to focus, even though the briefs and so on don't so much, on whether the union had a duty to inform or not. So our position is that someone, between the hotel and the union, had a duty to inform Mr. Scales. Well, that's fine. Maybe the employer had a duty. But unless the union had a duty, then the union's representation in the suit against the employer in arbitration was perfectly proper. So where does the union's duty under a normal union contract to inform its members of something like this come from? So I don't believe that necessarily the union did have that duty, and I don't think there's sufficient factual record for us to make that determination. The conflict that I believe you're referring to is not purely from the union's representation at arbitration. That alone we think would have been fine. The conflict arises as a result of the concurrent representation of the union of Mr. Scales at arbitration and the district court litigation. But the union typically represents somebody in their claim, and then to say that because of that there is a conflict later would mean that the union could never represent the client in the original thing, which would be against all of what I would think you would want. There's two factors here that make this unusual. First is the concurrent nature of the arbitration and the district court litigation. The district court litigation was filed first and was pending during the arbitration. That created a conflict. The second issue is the fact of the union's counsel, the Pitta Law Firm, which represented Mr. Scales in the arbitration and then simultaneously represented the union adverse to Mr. Scales in the district court litigation. So those two factors are what we think make this different from a usual case where a union is representing a union member at arbitration. So the district court, we believe, erred in its analysis by not looking beyond the four corners of Mr. Scales' amended complaint. And had it done so, had it looked at other submissions Mr. Scales made to the court, it would have seen that the union was acting arbitrarily and in bad faith as a result of this conflict that I have just discussed. The court would have seen that the union had a serious conflict of interest in its representation of Mr. Scales. These facts were plainly in the record before the district court. Additionally, the union failed, without explanation, to present evidence of harm to the impartial chairperson. This fact was also before the district court, and this, too, satisfies the arbitrary prong for a duty of fair representation. I'm sorry. What was the evidence of harm before the district court? There was no – what was the evidence of harm before the district court? I think you just – forgive me if I misheard. I thought you just said there was evidence of harm before the district court. Yes. So Mr. Scales, in several submissions to the district court, docket number 70 – I'll find the site for you – he stated that he had given evidence of harm to the Pitta law firm, and they had not handed that evidence of harm to the arbitrator. You can find that at the Joint Appendix 137. That was submitted to the district court. And what was that harm? Was it his inability to access the funds because he couldn't take a loan?  To start a business, or was there something else? It was his inability to access the funds. I know that the union has discussed whether or not he would have made money on those business ventures if he had accessed those funds. That's not really the question here. The fact of the matter is loss of access to funds is a cognizable harm, even if those funds are later being held for Mr. Scales. Is that a hard – I mean, obviously he wanted the funds to go into a different 401k plan. Wasn't it obvious that that's the reason why? Like, did that really need to be stated? Or wasn't the whole purpose of him wanting it switched was so that he could have access to the funds? So I'm trying to understand what was missing at the arbitration that wasn't so obvious on its face. It's difficult to discuss this without getting into the excluded materials, specifically the OIC arbitration decision, which is not in the record. But that was an issue with the arbitration, that the arbitrator did not understand the difference between the 401k plan and the union pension fund. In my last few minutes – not last few seconds – I'm going to move to the denial of counsel, where we would say that the district court abused its discretion in denying Mr. Scales counsel. While the district court has wide latitude to appoint pro bono counsel in civil cases, it must, under Hodge, undertake a reasoned analysis. The district court, in this case, failed to do so. It issued an identical rote response. And there was no evidence in the record that, after the first request, it considered any of the additional information put in front of the district court by Mr. Scales. And this includes all of the evidence about Pitta's conflict of interest. All right. Thank you, counsel. Thank you. You do have three minutes reserved for rebuttal. We'll hear from Attorney Saltzman. Good morning, Your Honor. Excuse me. Lift the mic. You're taller. Lift the mics up. Very good. Is this better? Good. Excellent. Thank you, Your Honor. The district court should be affirmed. This is a fairly standard duty of fair representation case. And the district court was correct in holding that Mr. Scales' attempt to get arbitration that the union initially denied in 2018, 2019, was denied well within the union's discretion as to how to balance its issues. As to the notice and informing, there's nothing in the record that indicates that the union was supposed to inform. If you look at the memo agreement itself, it speaks to the hotel and it speaks to the pension fund. Pension fund, as you all know, in Taft-Hartley plan, is distinct from the union itself. It's not under union control. It would be illegal. So there are two other entities that may have had an obligation, but it wasn't the union. In any event, it's hard to figure out how the union could have informed him since he was on leave. He was at least on layoff. He may have been terminated, but the record's not clear. He certainly says he was on layoff, so he wasn't on premises. And he made no effort. There's no indication in the record that he made any effort to find out what was going on at the hotel or contacted the union that represented him until, I believe, six years after the fact. At the time, he didn't know and he was on leave and nobody told him. So the question was, when he was on leave, did somehow the union have an obligation to him? But the notion that he didn't reach out doesn't strike me as being particularly helpful. I don't quite know where the union's duty to notify him comes from. But to say that he should have reached out just doesn't make much sense to me. Okay, well, the duty of representation, as you know, is a balance, and it would be negligence perhaps if the union should have reached out to him but didn't for whatever reason, and the reason seems obvious. He wasn't there on premises to be contacted. They didn't know what his status was. They just had gotten representation. So the worst one can say is that the union was negligent in that affair, and I'm not conceding that. But there's nothing in the record that indicates it was the union's duty to inform. Generally, informing employees of the terms and conditions is the human resource duty. So if you're going to hand out employment records, it comes through the hotel, not through the union. If you step away from the employer's responsibility, which is basic, then you get to the pension fund, and this is a Taft-Hartley plan, not a 401K plan. It's a defined benefit plan which secures the investment for retirement time, and that's why you can't withdraw from it under any circumstances. I mean, there are some limited circumstances, but very limited. Now, if the notifications generally by the employer are not adequate, does the union have a responsibility to all of its members to check into that and make them adequate? I mean, that's a bit different from saying they had a responsibility to this particular person, but if what the employer was doing generally was inadequate, there might be a union duty under a collective bargaining agreement. That would be a hypothetical that would be instructive. In fact, there's nothing in the record that indicates the union didn't make sure that the members that were present, that were actively employed at the time of the election, knew about it. It also doesn't say, oh, you know, there were other people who had problems. It was a little confused state. The union sat by and let the employer muddy up the record. No, it seems like everybody did what got noticed. Everybody made their election, and those who wanted the defined benefit plan got it. Those who wanted the 401K, that was the employer's 401K, existing before the union had representation rights, which is why one of the reasons that the business agent gave to Mr. Scales said, what do you want us to do? This is not our plan. We can't really go after that. So it may be that the union certainly has a duty to police the workforce, workplace, and make sure that the employer is not doing his job, that they step in and make sure the employer does its job. The union doesn't do the employer's job for the employer. That would be a big problem. The union makes sure the employer does the employer's job for the employer to the extent it affects the members. In the MOA, there was an exhibit, Exhibit C, which listed employees that were not then at the time. This was December 5th. Yes. During that month period of election that they were not on the job, if you will, or they weren't laid off.  Mr. Scales was listed on that list. And it said, you know, one of two things. Either it's a layoff with the right to recall or severance, in which case they'll have no option. Correct. Whose obligation was it to follow up under the MOA as far as those employees that were on that list? If there's anything in the record to suggest that. If the employee terminates, then there's no obligation for anybody. Right. If the employee remains on layoff hoping for recall, then it's the employer's obligation because the employer is the one that recalls and maintains the contact for employment purposes with its employees. Okay. So does that inform us on the front end as to whose responsibility it was to inform Mr. Scales that there was this window of opportunity to elect? I believe so. I believe that the employer, the hotel, had the responsibility. And without getting into the arbitration, that was the argument of the arbitration. That's what the argument is. No, you are saying, in fact, that the union did its job in claiming that the employer had not done it and that that, far from creating a conflict, was exactly doing what it should have been doing. Correct. And what's more, exactly what Mr. Scales wanted the union to do some two or three years earlier. The union simply made a decision that rather than fight against a member in district court and take resources. Now, remember, this is the end of COVID. So maybe judicial notice that the industry was closed down. Members were now being called back. People were fighting for health benefits. It was a mess. And the union made the decision at that time. First, the decision was we're not taking it to arbitration. The second one, when the district court case paused, with the district court judge's knowledge and with Mr. Scales' knowledge, in order to allow for the arbitration, the union said, let's not waste everybody's resources. Let's just bring the arbitration and see what happens. I can only say that the union did its best and the union council did its best. It didn't work out the way. So that's why we're here in litigation. But the union fulfilled. Can you speak to the conflict question of coinciding adversarial representation? Concurrent representation, yeah. It really wasn't concurrent in the sense of who was acting because the district court case had just started. There was no action going on. At the first conference, the union made this proposal, and the district court judge agreed. Mr. Scales agreed. And so it was not concurrent in that sense. In the broadest possible sense, there was no conflict because, as Your Honor indicated, the union was trying to get his job, get his money. That wasn't his money. They wanted to get the contributions from the employer that had been made in one place to the other place. And they were trying to do that, so there was no conflict on the issue. It would be stupid to go to arbitration in order not to win. If you win it, the case goes away. That was the whole point. So it didn't work. But in terms of, you know, the cases are pretty clear that when a member goes to arbitration, that the union is the client, not the member, and that if the member later challenges the award and the union's duty at the arbitration, then union counsel, regular union counsel, is the choice of the union, and you don't deprive a client of their choice. You say the cases are clear. I think you cite district court cases. Yes. Yes, I do. I don't know that this issue came before this Court before, but I think the district courts are pretty uniform about it. This case is somewhat different, as counsel points out, because there was already a litigation about the union's duty, not at arbitration, prior some years, but that cuts in favor of the union, not against, because in the normal arbitration, the grievant does not really understand necessarily that the union's counsel that's now representing him may be union's counsel in a challenge to the arbitration later. Here, Mr. Scales knew. He says, they're representing, this firm is representing me and the union. So he knows there's two parties by his own admission. If he wants to be careful about anything he says, he knows in advance not to. And this is a motion to dismiss. So there's no real harm. There's harm that maybe something will pass, maybe the information — it's a motion to dismiss. Maybe in another case, but not in this case, because we had to accept everything he said, because it's a motion to dismiss. Let me — my time is maybe up? Yes. Your time is up. May I conclude? One point? Very briefly. Very briefly, indeed. The duty of fair representation means the attorney acting for the union looks out for the best interest of the grievant. They would have been — it would have been contrary to that duty if we had withdrawn because that would have allowed somebody, some other attorney with less experience, less knowledge in the industry with the arbitrator, and it would have signaled to the arbitrator that the union is not behind this grievant. Thank you, Mr. Saltzman. Thank you. Ms. Halpern, you have three minutes. Thank you, Your Honor. I want to quickly revisit this question of the duty to notify. And there's been a lot of discussion today on both sides about what happened in the arbitration, what did the union do, what did the hotel do. None of these facts are in the record. This is undoubtedly as a result of Mr. Scales' pro se representation in the district court. And I think this only underscores that the appropriate remedy here is remand to the district court for development of the factual record so that these questions can be adequately considered. Both facts that I and Mr. Saltzman have raised today in response to those questions deal with documents that are not in the district court record. In terms of the failure to notify, this is one element of the two-prong element of a breach of a duty of fair representation claim. The first element, the breach of the collective bargaining agreement, that falls upon the  We argue that the hotel breached its duty to notify. As a result of the hotel's breach, which I do not believe is contested by the union, then the union had a duty to adequately and fairly represent Mr. Scales in the arbitration. We do not believe that the union fulfilled that duty because they were acting both arbitrarily and in bad faith as a result of this positional conflict. The union conducted itself in such a way in the arbitration that Mr. Scales alleged that they were using the arbitration to sabotage his chances in the district court process. This is why it's so important that the cases were concurrent. The cases that the union has pointed to all deal with subsequent litigation. There was an arbitration. The arbitration concluded. The employee then brought suit in the district court. That's not what happened here. While the arbitration was proceeding... What in the arbitration does your client allege that the union did that was improper? The first thing that he... I mean, they allege conflict. Yes. But that's a difference. But specifically, what in the arbitration should... But we can see, did the union do what it should not have done? One of the most significant things is that they did not put evidence into the arbitration record that Mr. Scales requested and that Mr. Scales gave them documents. Those documents were never entered into the arbitration record. There is no explanation whatsoever for why the union's counsel did this. And where there's no explanation, that satisfies the standard for arbitrary conduct for a duty of fair representation claim. Well, conversely, you said he was complaining that he, on a pro se basis, that he was sabotaged, that they were using the arbitration, the union was using the arbitration process to sabotage his chances of success in the district court filing against the union. What did he claim that presumably should be in the record before the district court, other than just the conflict of it being the same counsel? What was the sabotage that he claimed? So, once again, this is an issue where the district court record just is not complete. But whose fault is that? Your client wasn't precluded from putting up proof of what that sabotage was, the content. Understood, but our client was representing himself pro se, and as we've argued elsewhere, really needed pro bono counsel in order to get those documents into the record and in order to be able to articulate a legal claim. Even though the facts were there, he had trouble without counsel articulating a cogent legal claim, which is why these two issues are intertwined, and why these are both reversible errors. I know you're over time, but if you could just succinctly tell me where in the record is the facts about what the substance of that sabotage was, other than it's the same lawyer. So, Joint Appendix 110 and Joint Appendix 140 of both submissions from Mr. Scales, where he states that he believes the union is conducting themselves in the arbitration in such a way as to disadvantage him in the district court process. Thank you. All right, thank you. Thank you both. Well argued. Ms. Halpern, thank you to you and your firm for taking on the matter pro bono. Appreciate it. The matter is submitted, and we'll take it under advisement.